**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Andrew Jones,                                        Civil No. 08-5363 (DWF/JJK)

           Plaintiff,

v.                                                       **MEMORANDUM**
                                                         **OPINION AND ORDER**

Handi Medical Supply, Inc.,
a Minnesota corporation,

           Defendant.

---

Howard L. Bolter, Esq., Borkon, Ramstead, Mariani, Fishman & Carp, Ltd., counsel for Plaintiff.

Lee A. Lastovich, Esq., and Alyssa M. Toft, Esq., Felhaber Larson Fenlon & Vogt, PA, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Defendant's motion for summary judgment (Doc. No. 9). For the reasons stated below, this Court grants the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Andrew Jones was hired in October 2005 by Defendant Handi Medical Supply, Inc., as a director of rehabilitation sales. (Doc. No. 1 ¶ 6.) In January 2007, Jones, a Second Lieutenant in the United States Army Reserve, informed Handi that he

had recently received notice that he was required to report for service that was to commence on January 30, 2007 and to last for several months. Handi granted his request for leave and loaned him approximately $4,000 to cover personal expenses.

Upon Jones's return from military service in late May 2007, he resumed his position with Handi, retaining his pre-leave title, duties, and compensation. But shortly after Jones returned to work, Handi's Chief Operating Officer, Michael Bailey, informed Jones that he would best serve the company by being moved to a sales position. (*Id.* ¶ 9.) Several months later, in October 2007, Handi altered the terms of Jones' employment. The change involved moving from an office to an administrative cubicle area amongst the sales representatives he formerly supervised. Jones's base salary also was reduced from about $70,000 to $55,000 per year. (*Id.* ¶ 12.) His bonus structure also changed (although the parties dispute how the change should be viewed). In December 2007 or January 2008, however, Handi forgave the $4,000 loan it had made to Jones before his military leave. On May 13, 2008, Jones called Mr. Bailey to inform him of his intent to submit his notice. (*Id.* ¶ 13.) Two days later when they met to discuss the matter in person, Bailey terminated him effective immediately. (*Id.* ¶ 15.)[1]

Jones then filed this action claiming violations of the Uniformed Services Employment and Reemployment Rights Act ("Reemployment Act"), 38 U.S.C. §§ 4301-

---

[1] Handi, however, claims Jones simply resigned when he met with Bailey. But on this motion for summary judgment by Defendant, the Court construes the facts in the light most favorable to Plaintiff.

33, particularly that Handi discriminated against him based on his military service after his resumption of employment. Handi now moves for summary judgment, contending that there are no material facts in dispute that could support any inference of a discriminatory motivation on its part.

## DISCUSSION

I. **Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court recognizes that summary judgment is often inappropriate in employment discrimination cases insofar as the employer's intent is the central issue and the claims are often based on inference. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005) (affirming in part and reversing in part summary judgment for employer). But "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Shempert v. Harwick Chemical Corp.*, 151 F.3d 793, 796 (8th Cir. 1998) (affirming grant of summary judgment on Title VII claims).

II. **Post-Reemployment Discrimination Against Military Personnel**

Under the Reemployment Act, an employer generally must reemploy a former employee, who departed employment to serve in the armed forces, following that period of service, 38 U.S.C. §§ 4312-13, and following reemployment may not then discriminate against that employee based on his military service, *id.* § 4311(a), (c)(1). *See generally*

3

*Clegg v. Arkansas Dept. of Correction*, 496 F.3d 922, 930 (8th Cir. 2007) (summarizing differences in various types of claims as discussed in *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006)).  Because Handi reemployed Jones upon his return from service, the only issue here is whether Handi later discriminated against Jones, in violation of 38 U.S.C. § 4311, following reemployment.[2]

An employer violates the Reemployment Act if the employee's "membership in the uniformed services is a *motivating factor* in the employer's action," unless the employer can prove it would have taken that action "in the absence of" such membership. *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005) (internal citations omitted).  The procedural framework for evaluating Section 4311 claims thus differs from the three-stage *McDonnell Douglas* burden-shifting scheme applicable to Title VII (and other employment discrimination) claims.  Under the Reemployment Act, if the employee

---

[2] Although Jones's Complaint suggests that he is also pursuing a claim that Defendant failed to reemploy him in violation of 38 U.S.C. §§ 4312-13, Jones has clarified that his claims are confined to the post-reemployment discrimination provisions of the Act.  Defendant contends, however, that the Complaint, which includes a single count that by its terms alleges that Defendant "failed to reemploy Plaintiff" in various manners, must be limited to a straightforward failure-to-reemploy claim.  But while Jones could have separated out as separate counts each of the alleged violations of the statute, he asserts and further clarified whether his claims involved an outright failure to reemploy or discrimination following reemployment (or both), under the applicable notice pleading standard the Complaint probably should not be confined to allege a single claim of failure to reemploy.  The Complaint alleges violations of "38 U.S.C. § 4301, et seq. for reasons including, but not limited to" certain failures, "among other things." (Doc. No. 1 at 4.)  But the Court concludes that it need not actually decide the question of what claims the Complaint adequately states, because even if it construes the Complaint liberally and broadly, Defendant still would be entitled to summary judgment on any claim that Defendant discriminated against Jones following his reemployment.

4

makes an initial showing that his military status was at least a motivating or substantial factor in the employer's action, then the employer must prove, by a preponderance of the evidence, that it would have taken that action despite the employee's military status. *Id.*; 38 U.S.C. § 4311(c)(1).

Here, the Court concludes that Jones has not raised any genuine issue of material fact that Handi's actions were motivated in any substantial part by Jones' military service. The Court will assume that the changes in the terms and nature of Jones' employment following his return from military service–the "demotion" to sales representative, the move from a private office to a cubicle, and the change in compensation, which Handi contends was necessary to bring Jones' salary in line with the other sales representatives–constitute an adverse employment action.[3] Thus the issue becomes solely one of discriminatory motivation.

Jones concedes that Handi readily granted his request for a military leave, that no one at Handi tried to discourage him from taking such a leave, and that he appreciated Handi's reaction to his request. (Doc. No. 13-1 (Jones Depo.) at 74-75.) Jones contends that because these changes occurred following his return from military service and

---

[3] Handi disputes whether the changes amount to a demotion, noting that the sales representatives were the highest compensated employees of Handi. On a related point, Handi also asserts that Jones agreed to change to the sales position, but Jones claims that he, as an employee, simply obeyed his employer's decision. On this motion for summary judgment, the Court will assume that Handi dictated the change rather than merely having offered Jones a different position that he then voluntarily accepted and that the overall change constituted a demotion.

5

because there had been no indication of any shortcomings in his performance before he took his leave, Handi made the changes based (at least in substantial part) on Jones's military service. Jones argues that before his leave, he "was under no performance improvement plan," his "job was not in jeopardy," he "had never been told he would be demoted" and that "[n]one of the issues which Defendant claimed motivated them to take their adverse actions were communicated to Jones prior to his military leave as a basis for any adverse action afterward." (Doc. No. 18, at 10.) Jones thus contends that "[i]t defies logic that the only two reviews *before* leave were solid, but suddenly, while Jones was on leave, numerous deficiencies were discovered." (*Id.* at 12 (emphasis in original).)[4] He

---

[4] Defendant, however, asserts that Jones's performance before he left for his military service was deficient, noting that pre-leave reviews indicated certain areas where improvements could be made. (Doc. No. 12 at 3-4.) There is some evidence of record noting shortcomings in Jones's performance before he departed for his military service. (*E.g.* Doc. No. 13-2 (Bailey Depo.) at 22-34; Doc. No. 23-1 (Bernardus Depo.) at 18-20.) "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 834 (8th Cir. 2002). But the fact that Handi viewed Jones' performance before he left as something less than perfect does not necessarily establish that it was so dissatisfied with his performance that it would have demoted him based on that record. Such relative gradations of satisfaction (or dissatisfaction) do not provide a reliable basis for judicial hindsight assessments of what actions an employer could have validly taken. In fact, Handi increased Jones' base salary in late October of 2006 from $68,500 to $70,383.75, which does not seem consistent with performance deficiencies severe enough to warrant the subsequent demotion. And as Bailey stated, Handi does not give an employee a merit increase unless they warrant it. (Doc. No. 13-2 (Bailey Depo.) at 21.) The Court will assume that Handi's appraisal of Jones before he left for military service–based on what Handi knew at that time–would not have warranted the changes it made following his return from service.

also notes that if such problems in fact existed, he "should have been given an opportunity to improve." (*Id.*)[5]

In short, Jones relies substantially, if not entirely, on the fact that the adverse actions occurred after–and at least with respect to shifting Jones from a supervisory capacity to a sales position, shortly after–his return from military service.[6] Granted, it is clear that the changes in the terms of Jones' employment occurred after he returned from military service.

But as the Eighth Circuit has discussed, such temporal proximity alone is generally insufficient to establish causation. *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (quoting Eighth Circuit's *en banc* decision in *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)).[7] And here there is nothing in the record to support any plausible inference of discriminatory motivation reflected in such temporal proximity. When Jones was away on his leave, his supervisor assumed Jones's role and, in that capacity, discovered substantial shortcomings in Jones's performance before his leave.

---

[5] The lack of any chance to improve performance deficiencies bears little if any weight in the motivation calculus unless perhaps either the law requires, or an employer's custom or contract provides for, such an opportunity to redress. Neither apparently exists here.

[6] There is no direct evidence of any discriminatory motivation, such as a statement by management that it is opposed to the military or that it views military leaves negatively.

[7] Beyond that general rule, however, the *Smith* court noted that such claims of proximity usually remain highly fact-dependent inquiries. *See id.* at 832-33 (summarizing various cases). The court thus concluded that no clear single rule governs all such cases as a matter of law. *Id.* at 833.

Accordingly, the temporal proximity does not suggest a retaliatory motive. Rather, Jones's absence apparently simply facilitated Handi's discovery of performance deficiencies that existed before, and independent of, his leave. *Id.*

As Handi explains, while Jones was away on leave, Bailey noticed numerous deficiencies in Jones's management of his department. (Doc. No. 12, at 6 (citing Ex. J); Doc. No. 23-1 (Bernardus Depo.) at 33.) Bailey documented his observations in a "Performance Log" that he prepared during the time he assumed Jones's position while Jones was on leave. (Doc. No. 13-2 at 40-41.) Bailey noted, among other things, that Jones was meeting with his team only rarely, that service technicians were not scheduled properly, that overtime was excessive, and that general organization was poor. (Doc. No. 13-4, Ex. J.) Bailey also noted that Jones' personal use of a cell phone provided by Handi was inappropriate. (*Id.* at 53.) Moreover, Handi was dissatisfied with Jones's performance as a sales representative following his return from military service. (Doc. No. 13-2 at 46, 52.)

In short, there is no direct evidence of any discriminatory animus of Handi towards Jones' military leave and the temporal sequence alone does not support any permissible inference of causality that could preclude summary judgment.[8]

---

[8] *Hill v. Michelin North America, Inc.*, 252 F.3d 307 (4th Cir. 2001), on which Jones relies, is not to the contrary. In *Hill*, the Fourth Circuit identified a genuine question of fact regarding the employee's transfer between positions. Noting that "the parties strongly disagree about why [the plaintiff] was transferred," the court reversed summary judgment for the employer because the employee "contends [defendant]
(continued...)

## CONCLUSION

Even if the Complaint is construed to claim post-leave discrimination against Jones based on his military service (rather than a simple failure to reemploy), Handi is still entitled to summary judgment because Jones has identified no material facts that could support a genuine inference of any discriminatory motivation in violation of the Reemployment Act.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (Doc. No. 9) is **GRANTED**.

2. Plaintiff's complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: December 14, 2009                 s/Donovan W. Frank
                                                     DONOVAN W. FRANK
                                                     United States District Judge

---

[8](...continued)
transferred him against his will because of his [military] obligations, while [defendant] contends that [the employee] asked to be transferred despite [defendant's] assurances that [his former position] could accommodate [his military] obligations." *Id.* at 313. As the court in *Hill* earlier recounted, the plaintiff contended that his supervisor–before the change in position–was distraught over the possibility of the plaintiff having to interrupt his employment for military service and even called him at home to express his concerns, whereas the employer contended that the plaintiff was the one who not only expressed concerns over how his absence would impact the other employees in his area, but also initiated the transfer despite his employer's assurances his military obligations could be accommodated. *Id.* at 309-10. Such a factual dispute plainly presents more than mere temporal proximity between military service and an adverse employment action.